# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOANNE CURLEY, et al.          )
       Plaintiffs         )       **C.A. No. 07-145Erie**
                      )       **District Judge McLaughlin**
**vs.**                    )       **Magistrate Judge Baxter**
                      )
**CATHERINE C. McVEY, et al.**   )
       Defendant.      )


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## ON DEFENDANTS' MOTION TO DISMISS


## I.      RECOMMENDATION

      For the foregoing reasons, it is respectfully recommended that Defendants'

motion to dismiss [Document # 11] be denied in part and granted in part. To wit,

-   the motion to dismiss should be denied as to Eleventh Amendment immunity;

-   the motion to dismiss should be granted as to the procedural due process claims;

-   the motion to dismiss should be granted as to the procedural due process claims;

-   the Separation of Powers claims should be dismissed;

-   the motion to dismiss should be granted as to the Fifth Amendment double jeopardy claim;

-   the motion to dismiss should be granted as to the Sixth Amendment claim;

-   the motion to dismiss should be granted as to the Fifth Amendment self-incrimination claim;

-   the motion to dismiss should be granted as to all *ex post facto* claims; and

-   this Court should decline to exercise supplemental jurisdiction over the state law claims.

In light of the Recommendation to dismiss this case, the motion to certify the class action [Document # 8] should be dismissed as moot.

## II.    REPORT

### A.    Relevant Factual and Procedural History

The thirty-six named Plaintiffs[1] have filed this self-styled class action[2] challenging the

---

[1]  The named Plaintiffs are: Joanne Curley, Anna Mae Shaffer-Barnhart, Debra Voich, Helen Bevilaqua, Bonnie Neely, Eric Roach, Edward Novasak, Southchay Chareunsack, Reginald Sanford, Claybourne Frazier, Howard Watson, Rodney Gateward, Jessica E. Wolfe, Larry W. Garris, James Darras, James Nonnenberg, Jerry Vail, Joseph Martz, Stephen Stoltzfus, Ronald Weaver, Paul Reefer, Terry Lyn Orner, Bernard Wintergrass, Richard Baum, Ellsworth Groff, Jr., Nguyen Dung, Raymond Weiler, Hugo Zuniga, Richard Young, Brian Looks At Clouds Richard, George Ross, Wayne Keller, Robert Benchoff, Steven Podobensky, Christopher Toland, and Gregorio Vargas.

[2]  Plaintiffs define two separate classes, each with two subclasses, as follows:

**Class One**

All current and future Pennsylvania inmates presently incarcerated for an indeterminate sentence which necessarily requires granting a parole if an inmate is to be released from prison prior to serving their maximum sentence day for day (i.e. calendar time).

(1) the first subclass, termed the **active class**, shall consist of all Named Plaintiffs (i.e. representative clients) that have financially supported this litigation through payment of a moderate legal fee (i.e. $400). Counsel for the class will maintain this list of active members and keep opposing counsel abreast of new additions periodically or as requested.

(2) the second subclass, termed the **dormant class**, shall consist of all remaining incarcerated Pennsylvania inmates eligible for parole, excluding of course those inmates exercising their prerogative to opt out of the class.

(continued...)

manner in which the Board of Probation and Parole and the Department of Corrections operate and manage the parole system. Plaintiffs are represented by counsel, Norman Sirak, Esquire.[3]

The named Plaintiffs are identified only by name, prisoner number and address (as of the date of the filing of the complaint) and are individuals who have been convicted of felonies

_____

[2](...continued)

**Class Two**

All currently and future paroled Pennsylvania inmates subject to the supervision of these Defendants whose right to remain in free society is subject to their discretion, plus all incarcerated Pennsylvania inmates serving time for technical violations occurring on parole or probation, whose release from prison necessarily requires the granting of a new parole if an inmate is to be released prior to serving their Parole Board amended maximum in calendar time.

(1) the first subclass, termed the **active class,** shall consist of all similarly situated Pennsylvania inmates that have financially supported this litigation through payment of a $400 fee. Counsel for the class will maintain this list of active class members and keep opposing counsel abreast of additions periodically or as requested.

(2) the second subclass, termed the **dormant class**, shall consist of all former Pennsylvania inmates that cannot financially support the maintenance of this litigation. All remaining Pennsylvania inmates shall fall into this class by default, excluding of course those paroled inmates exercising their prerogative to opt out of the class.

Document # 1, ¶¶ 28-32. Plaintiffs maintain that "these proposed classes are fluid, in that inmates are leaving Class One and joining members in Class Two. Members of Class Two are being violated and returning to prison, where they can join members of Class One." Id. at 34.

[3] Attorney Sirak has brought two prior class actions challenging matters of state parole in the federal courts of Ohio and Texas. See Michael v. Ghee, 411 F.Supp.2d 813 (N.D. Ohio 2006); Brasfield v. Owens, Case Number A-05CA-1099SS (W.D. Texas 2005). In addition, Attorney Sirak claims that he entered an appearance as *amici curiae* on behalf of his Ohio clients in the U.S. Supreme Court in Wilkinson v. Dotson, 544 U.S. 74 (2005).

punishable by a minimum term of two years[4]. The named Plaintiffs are either in the custody of the Pennsylvania Department of Corrections awaiting a favorable parole decision by the Pennsylvania Board of Probation and Parole (hereinafter, "Board") or on parole and under the supervision of the Board. Document # 1, ¶ 12.

Named as Defendants are: Catherine C. McVey; Michael L. Green, Jeffery R. Imboden, Matthew T. Mangino, Benjamin A. Martinez, Gerard N. Massaro, Michael M. Webster, Lloyd A. White, John Doe the unappointed Ninth Board Member; Secretary of the Department of Corrections Dr. Jeffrey A. Beard; Executive Deputy Secretary of the Department of Corrections; and Director of Bureau of Inmate Services Judith Viglione.

Plaintiffs allege that Defendants have engaged and continue to engage in various unconstitutional practices as they relate to the grant or denial of parole. In their prolix eighty-five page complaint, Plaintiffs assert the following federal causes of action, verbatim:

Count I - due process

    a)    "unconstitutional reliance upon unchanging factors"

    b)    "lack of notice"

Count II - separation of powers/Fifth and Sixth Amendment violations

    a)    "usurpation of judicial authority"

    b)    "modifying a judicially imposed sentence"

    c)    "denying parole for failing to confess to crime"

Count III - ex post facto clause

    a)    "delaying the exercise of discretion"

---

[4] The complaint explains that: "The criminal activity of the named and not named plaintiffs runs the entire ambit of labeled human behavior. The largest group of crimes involves situational circumstances that will never be repeated. Next, many of these crimes have been driven by additions to drugs and alcohol. There are some truly horrific crimes, and a far larger number of Plaintiffs that steadfastly maintain their innocence. Many inmates were in their teens when these crimes were committed. Today, in middle age, these offenders have secured college degrees, vocational training and transformed themselves into model prisoners." Document # 1, ¶ 14.

b)      "decision-making outside realm of normal channels"

Document # 1. The named Plaintiffs also raise state law claims, including: Count I - breach of parole contract; Count II - usurpation of judicial authority; Count III - failure to provide true reasons for denial; Count IV - failure to follow parole suitability criteria; Count V - malfeasance, misfeasance and nonfeasance; and Count VI - arbitrary and capricious decision-making. Id. The named Plaintiffs seek injunctive and declaratory relief pursuant to § 1983.[5]

## B.    Standard of Review

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the

---

[5] Interestingly, Plaintiffs also request that this Court exercise "the principles of pendant jurisdiction" to combine "remedies under §1983 with habeas corpus remedies, subjected to and dependent upon: 1) Plaintiffs' prevailing on the merits of a §1983 claim and, 2) the declaratory relief of §1983 affords partial relief, 3) necessitating a merger of §1983 and habeas corpus because both remedies are indispensable ingredients in the same case or controversy for Article III purposes." Document # 1, ¶¶ 6-9, 37.

light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974. See Phillips v. County of Allegheny, ___ F.3d ___, 2008 WL 305025 (3d Cir. Feb. 5, 2008).


### C.    Eleventh Amendment immunity

Plaintiffs purport to sue all Defendants in their official capacities only. Defendants argue that the Eleventh Amendment precludes such a suit against them in their official capacities.

Generally, the Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274 (1977) (state agencies); Edelman v. Jordan, 415 U.S. 651 (1974) (state employees acting in their official capacity). A state may be sued in federal court only if (1) the state has waived its Eleventh Amendment immunity (see, e.g. Kentucky v. Graham, 473 U.S. 159 (1985)), or (2) Congress has made it unmistakably clear in either the language of a statute or in its legislative history that it is its intention to permit such suits (see, e.g. Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001)).

While the Eleventh Amendment immunizes state officials from monetary damages, such

immunity generally does not apply to claims for injunctive relief against state officials to enjoin conduct alleged to be an ongoing violation of the Constitution or federal law. Ex Parte Young, 209 U.S. 123, 129 (1908). In order to overcome immunity, the complaint must allege an ongoing violation of federal law and seek injunctive relief on those specific grounds. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 73 (1996) (Eleventh Amendment is no bar to federal jurisdiction over state officials when the suit seeks prospective relief to end a continuing violation of federal law); Verizon Maryland Inc., v. Public Service Commission of Maryland, 535 U.S. 635 (2002) (in determining whether Ex Parte Young avoids the Eleventh Amendment bar to suit, the court need only conduct a straightforward inquiry into whether the complaint alleges prospective injunctive relief to stop an ongoing violation of federal law).

Defendants argue: "although Plaintiffs in the present complaint attempt to suggest that the policies and practices of the Board constitute an ongoing violation of federal law, their claims are necessarily based on prior, adverse decisions of the Board which have resulted in their continued incarceration or recommitment to serve a previously imposed sentence. Thus, because there is no ongoing violation of federal law upon which to base their claims for injunctive relief, the claims against all Defendants in their official capacity must be dismissed." Document # 12, page 3.

To put it simply, Defendants misunderstand or misconstrue Plaintiffs' allegations. This is precisely a case premised on an alleged ongoing violation of federal law. Plaintiffs seek declaratory and injunctive relief to halt the ongoing practices and procedures of the Defendants.

Defendants' motion to dismiss should be denied in this regard.


**D.      Count I - Due process**

Plaintiffs allege that Defendants have violated their due process rights under the Fourteenth Amendment in myriad ways relating to parole determinations.

"Due process" is guaranteed through the Fourteenth Amendment of the United States Constitution which provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government. The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; while the "substantive" aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. Daniels v. Williams, 474 U.S. 327, 329-33 (1986).

### 1)    Substantive due process

Plaintiffs allege that Defendants engage in a practice of relying on subjective judgments springing from the "nature of the offense" for denying parole. Document # 1, ¶ 100. Plaintiffs explain that the terms *lack of remorse, lack of insight into their criminal behavior, failure to accept responsibility*, and *minimization of their role* (all reasons routinely used as criteria for the denial of parole) are merely euphemisms for "nature of the offense," a condition that inmates are powerless to change. Id.

The constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them. Foucha v. Louisiana, 504 U.S. 71, 80 (1990). See also Collins v. Harker Heights, 503 U.S. 115, 126 (1992) (the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government."). Several courts, including the U.S. Court of Appeals for the Third Circuit, recognize that, even though an inmate has no protectable liberty interest in parole that implicates procedural due process, his substantive due process rights may be violated if

parole is denied by arbitrary governmental action.  See, e.g., Monroe v. Thigpen, 932 F.2d 1437, 1442 (11th Cir. 1991); Newell v. Brown, 981 F.2d 880, 886 (6th Cir. 1992), cert. denied, 510 U.S. 842 (1993); Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980); Carter v. Kane, 938 F. Supp. 282 (E.D. Pa. 1996).

In this regard, courts have determined that decisions to grant or deny parole may violate a prisoner's right to substantive due process if such decisions are based on arbitrary and capricious factors.  The Supreme Court has declined to set forth a precise rule that defines the scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause.  County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (clarifying that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience.").   A substantive due process claim based upon alleged arbitrary and capricious action is not easily mounted, because the relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but rather, something more egregious, which the Third Circuit has termed "conscience shocking."  Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002). Our Circuit has made clear that "only the most egregious conduct will be considered arbitrary in the constitutional sense."  Id. at 247-48.

Plaintiffs argue that "once the prospect of parole is offered, due process under the U.S. Constitution requires this opportunity to be genuine.  Under practices applied by Defendants, the opportunity is illusory, not real.  When an inmate's liberty interest, although attenuated, becomes captive to a fact that can never change (i.e., the nature of the offense) and can never be influenced by the candidate, a right to parole has been arbitrarily abrogated in violation of the Due Process Clause."  Document # 1, ¶¶ 105-106.

Plaintiffs' argument is inapposite here.  The Board is vested with broad discretion to make parole determinations.  Since 1996, the Board has been statutorily bound to consider first the protection of the safety of the public.  61 Pa.Stat. § 331.1.  The Board is further statutorily

required to consider the nature and character of the offense committed, as well as the general character and history of the prisoner, the written or personal statement or testimony of the victim or victim's family, and the recommendations of the trial judge, the district attorney and of each warden or superintendent who has had control over the applicant.  61 Pa. Stat. § 331.19.

Here, neither the Board's consideration of criteria expressly mandated by the Commonwealth's statute nor the fact that some inmates serve their maximum sentence is egregious enough to shock the conscience and constitute arbitrariness in the constitutional sense. Defendants' motion to dismiss should be granted.

### 2)    Procedural due process

Plaintiffs allege that the notice principle of due process is violated when: "1) a criminal defendant is not told at sentencing that their prison term can be extended by the Parole Board for a new crime while on parole; 2) upon committing a new crime, time served in good standing is canceled; 3) the expiration date [originally] set by a judge is expunged; 4) canceled time is annexed to the end of the sentence, setting a new expiration date; and 5) the duration of the sentence is increased."  Document # 1, ¶ 114.  Plaintiffs explain that Defendants routinely cancel credit for time served in good standing between the granting of parole and the revoking of parole [in other words, "street time"] and adding this time to the end of the sentence.  Id. at ¶ 112. Hereafter, this scenario will be referred to as the "annexation of street time."

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest.  To establish a procedural due process violation, a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest.  Daniels, 474 U.S. at 339.  If a person does not have a constitutionally-protected interest, he or she is not entitled to the procedural protections afforded

by the Due Process Clause.[6]

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt v. Helms, 459 U.S. 460, 466 (1983). A liberty interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Liberty interests that fall within this category include the revocation of parole, Morrissey v. Brewer, 408 U.S. 471 (1972), and the revocation of probation, Gagnon, 411 U.S. at 778. However, the granting of parole prior to the expiration of a prisoner's maximum term is not a constitutionally-protected liberty interest that is inherent in the Due Process Clause. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979). Pennsylvania inmates do not have any constitutionally protected liberty interest in being released on parole prior to the expiration of their maximum sentence. Ledwith v. Brooks, 2007 WL 804189, at *4 (W.D. Pa.). State law expressly provides that an inmate is not entitled to release from prison until the expiration of his maximum sentence. Krantz v. Pennsylvania Board of Probation & Parole, 483 A.2d 1044, 1047 (Pa.Cmwlth., 1984) ("A prisoner's sentence is his maximum term. The significance of the minimum sentence is that it established a parole **eligibility** date; the only "right" that can be asserted upon serving a minimum sentence is the "right" to apply for parole and to have that application duly considered by the Board.") (emphasis added); Commonwealth v. Slotcavage, ___ A.2d ___, 2007 WL 4346167, at *2 (Pa. Super. December 13, 2007) (internal citation omitted) ("Under Pennsylvania law, a minimum

---

[6] If a liberty interest is found, the next step in the due process inquiry is to determine what process is due. "Due process ... is not a technical conception with a fixed content unrelated to time, place and circumstances." Gilbert v. Homar, 520 U.S. 924, 930 (1997). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). At a minimum, due process requires notice and the opportunity to be heard. Paul v. Davis, 424 U.S. 693, 724 (1976) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").

sentence merely sets the date prior to which a prisoner may not be paroled, as it is the maximum sentence that delineates the punishment imposed for the criminal offense. Under Pennsylvania's indeterminate sentencing scheme, a minimum sentence serves as a guide to the earliest potential release date."); Coady v. Vaughn, 770 A.2d 287, 291 (Pa. 2001). See also Thorpe v. Grillo, 80 Fed.Appx. 215, 219, 2003 WL 22477890 , at *3 (3d Cir. 2003).

Because no liberty interest is implicated, Plaintiffs are not entitled to the procedural protections of the Due Process Clause.[7]  Accordingly, Plaintiffs cannot support a claim based upon a violation of their procedural due process[8] rights and so, the motion to dismiss should be granted in this regard.

###    E.    Count II - "Separation of Powers"

Plaintiffs allege various violations of the "separation of powers" doctrine.  Plaintiffs identify the Board as an agency of the Executive branch while the courts are part of the Judiciary branch.  According to Plaintiffs, the Board is encroaching into the exclusive province of the judiciary by its various acts.

Under the separation of powers doctrine, certain powers are reserved exclusively to the Legislative, Executive, and Judicial branches of the government. See I.N.S. v. Chadha, 462 U.S. 919, 951 (1983). The essential purpose of the separation of powers is to allow for independent functioning of each coequal branch of government within its assigned sphere of

---

[7]  Plaintiffs' own complaint acknowledges that parole is "a privilege."  Document # 1, ¶ 105.

[8]  Even when this annexation of street time is analyzed under the rubric of substantive due process, it fails to state a claim as the fact that inmates are serving their maximum sentences after the revocation of parole is not egregious enough to shock the conscience and constitute arbitrariness in the constitutional sense.

responsibility, free from risk of control, interference, or intimidation by other branches." <u>Nixon v. Fitzgerald</u>, 457 U.S. 731, 761 (1982). Under the principle of separation of the powers of government, no branch should exercise the functions exclusively committed to another branch. <u>Id.</u> The doctrine prevents the concentration of absolute power in a single branch of government and precludes one branch from usurping another's power. A separation of powers violation occurs when one branch of government usurps the authority exclusively entrusted to another branch.

Plaintiffs assert the separation of powers doctrine is violated when Defendants, acting on behalf of the executive branch, alter the unambiguous terms of judiciary-imposed sentences, such as when Plaintiffs, after having parole revoked, are not credited with having served street time.

Plaintiffs have failed to state a constitutional claim against Defendants as there is no mandatory federal separation of powers doctrine applicable against the state. <u>See</u> <u>Sweezy v. State of New Hampshire</u>, 354 U.S. 234, 255 (1957) ("This Court has held that the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments"). <u>See</u> <u>also</u> <u>International Brotherhood of Teamsters v. Hank</u>, 339 U.S. 470, 479 (1950) ("The Fourteenth Amendment leaves the States free to distribute the powers of government as they will between their legislative and judicial branches."). It is for the Commonwealth to determine whether and to what extent its powers shall be kept separate between the three branches of state government. <u>Dreyer v. People of State of Illinois</u>, 187 U.S. 71, 84 (1902). The Pennsylvania Supreme Court has stated that "[t]he crucial function of the separation of powers principle ... is not separation *per se,* but the 'checking' power each branch has over the others." <u>Beckert v. Warren</u>, 439 A.2d 638, 642 (1981)**.**

Plaintiffs have not pled that any branch of the federal government was infringing upon the authority of any other branch of the federal government. Thus, Plaintiffs have failed to state

a viable constitutional claim in this regard and such should be dismissed.[9]

## 1) Fifth Amendment - double jeopardy

Plaintiffs allege that the annexation of street time violates the double jeopardy provision of the Fifth Amendment. Plaintiffs entitle this section of their complaint "usurpation of judicial authority." Plaintiffs' claim in this regard should be dismissed.

"The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: '[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb.'" Monge v. California, 524 U.S. 721, 727 (1998). The guarantee against Double Jeopardy consists of three separate constitutional protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted).

A violation of the conditions of supervised release does not constitute a new crime, and the revocation of supervised release is not properly considered a new punishment. See Johnson v. United States, 529 U.S. 694, 700 (2000) ("[P]ostrevocation sanctions [are] part of the penalty for the initial offense...."). See also Morrissey v. Brewer, 408 U.S. 471, 480 (1972) (the revocation of parole is not part of a criminal prosecution); United States v. Amer, 110 F.3d 873 (2d Cir. 1997); United States v. Whitney, 649 F.2d 296 (5th Cir. 1981); United States v. Wyatt, 102 F.3d 241 (7th Cir. 1996); United States v. McGowan, 960 F.2d 716 (8th Cir. 1992); Kell v. United States Parole Commission, 26 F.3d 1016 (10th Cir. 1994).

The requirement that a defendant only be punished once for a particular crime does not

_____

[9] This ruling does not apply to any state separation of powers claim Plaintiffs may have asserted under the Pennsylvania Constitution.

mean that this punishment cannot be modified or extended. As the Supreme Court has held, "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." United States v. DiFrancesco, 449 U.S. 117, 137 (1980).

Accordingly, the motion to dismiss should be granted as Plaintiffs have failed to state a double jeopardy claim.


2)      Sixth Amendment - "modifying a judicially imposed sentence"

Plaintiffs allege that the Board routinely denies parole based on mere allegations involving the use of a deadly weapon (whether in the indictment, in the prosecutor's sentencing memorandum or in an unsworn victim statement) even though the deadly weapon enhancement was dropped at trial or plea. Document # 1, ¶ 133. Plaintiffs claim that this practice violates the Sixth Amendment right to trial by jury, presumably as enunciated in the Apprendi/Booker/Blakely line of cases. Id. at ¶ 138.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court, held that the Due Process Clause requires that the findings upon which defendant's hate crime sentence were based must be proven to a jury beyond a reasonable doubt, as "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 471, 490. Thereafter, in Blakely v. Washington, 542 U.S. 296 (2004), based upon the Sixth Amendment's guarantee of right to trial by jury, the Supreme Court overturned a sentence imposed under the state of Washington's sentencing system which permitted judges to enhance criminal sentences based on information that had not been proven beyond a reasonable doubt to a jury. Finally, in United States v. Booker, 543 U.S. 220 (2005), the Supreme Court reaffirmed Apprendi, applied Blakely to the Federal Sentencing Guidelines, and concluded that the Sixth

15

Amendment requires that a jury, not judge, find "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict." Id. at 234 (quoting Apprendi, 530 U.S. at 490).

Plaintiffs urge this Court to extend this line of case law into the context of parole. This court declines to do so as "parole decisions have always been viewed as constitutionally distinct from sentencing decisions." United States v. Croxford, 324 F.Supp.2d 1255, 1264 (D. Utah 2004). Blakely itself describes approvingly fact-finding by a parole board while invalidating judicial fact-finding in the context of sentencing. Blakely,5 42 U.S. at 2539-41 (parole determinations "do not pertain to whether the defendant has a legal right to a lesser sentence and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.") (emphasis in original). Because the Sixth Amendment's right to a jury trial cannot be extended into the parole setting, Plaintiffs have failed to state a claim.

Accordingly, the motion to dismiss should be granted as to this claim.


### 3)    Fifth Amendment - self incrimination[10]

Plaintiffs argue that their Fifth Amendment right against self-incrimination has been violated because, as a prerequisite to obtaining consideration for parole, they are required to admit to the factual circumstances of their offenses. As Plaintiffs explain, parole is "held hostage" to confession of the crime. Document # 1, ¶¶ 144, 150.

---

[10] In their Opposition Brief, Plaintiffs attempt to shift the analysis away from "self-incrimination" to "lack of meaningful hearing" under the Fifth Amendment. Document # 13, page 25. However, the lack of a meaningful hearing puts this claim squarely under the Fifth Amendment's due process clause, not the Fifth Amendment's self-incrimination clause. See Armstrong v. Manzo, 380 U.S. 545, 552 (1965) ("A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner."). As this Court has previously discussed, because there is no liberty interest in parole, Plaintiffs are not entitled to procedural due process protections. See section D)2), infra.

The Fifth Amendment right against self incrimination is violated when compelled statements are used against a person in a criminal case. <u>Chavez v. Martinez</u>, 538 U.S. 760, 766-68 (2003) (plurality opinion); <u>Renda v. King</u>, 347 F.3d 550, 559 (3d Cir.2003).  Thus, "[t]he constitutional privilege against self-incrimination has two primary interrelated facets: the Government may not use compulsion to elicit self-incriminating statements, and the Government may not permit the use in a criminal trial of self-incriminating statements elicited by compulsion."  <u>Murphy v. Waterfront Comm'n</u>, 378 U.S. 52, 57 n. 6 (1964).

### a.      Compulsion

In <u>McKune v. Lile</u>, 536 U.S. 24, 41 (2002), the Supreme Court considered a claim concerning a prison treatment program that required participating prisoners to disclose prior sexual misconduct, whether charged or uncharged.  In determining whether "compulsion" had occurred, the plurality opinion focused on the consequences suffered by a prisoner who refuses to make the required disclosures.  Those consequences included a change in the prisoner's security status, transfer from a minimum security unit to a maximum security unit, and a change from a two-person cell to a four person cell in a more dangerous area of the prison. 536 U.S. at 30-31.  The Supreme Court concluded that the consequences to the prisoner, while adverse, were not sufficient to constitute compulsion.  In reaching this conclusion, the Court cited <u>Ohio Adult Parole Authority v. Woodward</u>, 523 U.S. 272, 286 (1998), where the Court found no unconstitutional compulsion when a death row inmate was made to choose between incriminating himself at his clemency interview or having adverse inferences drawn from his silence, and <u>Murphy</u>, <u>supra</u>, where a parolee was asked about uncharged criminal conduct and confessed out of fear that his refusal to answer would have resulted in the revocation of parole and 16 months incarceration.

In this case, the Court recognizes that the refusal of Plaintiffs to admit to the factual

circumstances of their criminal offenses may adversely influence the Board's parole determinations.   However, if the threat of additional incarceration or carrying out a death sentence is not sufficient to establish "compulsion" for purposes of the Fifth Amendment, then here the denial of parole also does not rise to the level of compulsion.  See Thorpe v. Grillo, 80 Fed. Appx. 215, 220 (3d Cir. 2003)(no Fifth Amendment violation where prisoner's "refusal to admit his guilt and the resulting inability to participate in the treatment program did not extend his term of incarceration or automatically deprive him of consideration for parole."); Folk v. Attorney General of the Commonwealth of Pa., 425 F.Supp.2d 663 (W.D.Pa. 2006) (no compulsion for purposes of Fifth Amendment where consequence of failing to participate were decreased chance of parole); Wolfe v. Pennsylvania Department of Corrections, 334 F.Supp.2d 762, 773 (E.D.Pa. 2004) (no Fifth Amendment violation where participation in program was voluntary and consequences were not severe enough to be compulsion).

Simply stated, Plaintiffs are "not entitled to parole, just to consideration of parole" (Thorpe, 80 Fed. Appx. at 220), and Plaintiffs do not contend that they were denied consideration for parole.  Furthermore, denial of parole did not and will not extend the term of Plaintiffs' incarcerations; denial of parol only requires Plaintiffs to serve their maximum sentences.

For the foregoing reasons, this Court finds that Plaintiffs have failed to state a Fifth Amendment claim as they cannot show that the Board uses compulsion to elicit self-incriminating statements in violation of their constitutional rights.


### b.        Use in a Criminal Proceeding

Even if Plaintiffs could prove that they are compelled to make self-incriminating statements, they cannot show that they are compelled to be a witness against themselves **in a criminal proceeding**.  See United States v. Patane,  42 U.S. 630, 637 (2004)("the core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to

18

testify against himself *at trial*")(emphasis added);  <u>Withrow v. Williams</u>, 507 U.S. 680, 691 (1993)(characterizing the Fifth Amendment privilege against self-incrimination as a "fundamental *trial* right")(emphasis in original).

If any admission was truly compelled from Plaintiffs, such an admission would be "inadmisible in a subsequent trial for a crime other than that for which he has been convicted." <u>Minnesota v. Murphy</u>, 465 U.S. 420, 426 (1984).  Thus, there is no reasonable expectation that such a "confession" could be used against Plaintiffs, as any admission obtained by compulsion would be suppressed at trial.

Plaintiffs have failed to state a Fifth Amendment claim and therefore, the motion to dismiss should be granted.

**F.     Count III - Ex Post Facto Clause**[11]

**1)     "delaying exercise of discretion"**

Plaintiffs' claims here, entitled "delaying exercise of discretion, " are difficult to decipher.  However, in their opposition brief, it becomes clearer that Plaintiffs are arguing that pre-1996 parole[12] candidates are being subjected to the heightened "public safety criteria" of the

---

[11]  The Ex Post Facto Clause of the United States Constitution provides that "[n]o state shall . . . pass any . . . *ex post facto* law."  U.S. Const. Art. 1, § 10.

[12]  The statute in effect between 1941 and 1996 made no specific mention of public safety and read:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment, and restoration to social and economic life and

(continued...)

1996 Parole Act[13].  Document # 13, page 29.

      The *Ex Post Facto* Clause"protects liberty by preventing governments from enacting statutes with 'manifestly unjust and oppressive retroactive effect." <u>Stogner v. California</u>, 539 U.S. 607, 611 (2003).  The Clause "forbids the enactment of any law which imposes a punishment for an act 'which was not punishable at the time it was committed; or imposes additional punishment to that then described.'" <u>Coady v. Vaughn</u>, 251 F.3d 481, 487 (3d Cir. 2001) (<u>quoting</u> <u>Weaver v. Graham</u>, 450 U.S. 24, 28 (1981)).  The Supreme Court has instructed that "[t]o fall within the *ex post facto* prohibition, a law must be retrospective--that is, it must apply to events occurring before its enactment--and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." <u>Lynce v. Mathis</u>, 519 U.S. 433, 441 (1997) (citation and quotation omitted).  "Retroactive

---

    [12](...continued)
        activities shall be aided and facilitated by guidance and supervision under a
        competent and efficient parole administration, and to that end it is the intent of
        this Act to create a uniform and exclusive system for the administration of parole
        in this Commonwealth.

<u>Mickens-Thomas v. Vaughn</u>, 321 F.3d 374, 377 (3d Cir. 2003) (hereinafter, "<u>Mickens-Thomas I</u>").

    [13]  In contrast to the multi-faceted analysis of the pre-1996 Act, the 1996 amendments to the statute placed a predominant emphasis on public safety consideration in making parole determinations:

        The parole system provides several benefits to the criminal justice system,
        including the provision of adequate supervision of the offender while protecting
        the public, the opportunity for the offender to become a useful member of society
        and the diversion of appropriate offenders from prison.  In providing these
        benefits to the criminal justice system, *the board shall first and foremost seek to*
        *protect the safety of the public*.  In addition to this goal, the board shall address
        input by crime victims and assist in the fair administration of justice by ensuring
        the custody, control and treatment of paroled offenders.

<u>Mickens-Thomas I</u>, 321 F.3d at 377 (emphasis added).

20

changes to the standards used in determining parole may, under some circumstances, violate the Constitution's prohibition on *Ex Post Facto* laws." Garner v. Jones, 529 U.S. 244, 250 (2000).

In analyzing whether a law violates the *Ex Post Facto* Clause, courts are required to determine whether the law resulted in "a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't. of Corrections v. Morales, 514 U.S. 499, 509 (1995). See also Garner, 529 U.S. at 255 (when the rule at issue does not by its own terms show a significant risk, the burden is on the parole applicant to demonstrate "that its retroactive application will result in a longer period of incarceration than under the earlier rule"); Johnson v. United States, 529 U.S. 694 (2000) (to succeed in *ex post facto* claim, petitioner must prove that legislation increases the penalty from whatever the law provided when the criminal act was committed).

Thus, to succeed in establishing an *ex post facto* claim, Plaintiffs must be able to show "both a retroactive change in law or policy and that this change caused individual disadvantage by creating 'a significant risk of increasing his punishment.'" Richardson v. Pennsylvania Board of Probation & Parole, 423 F.3d 282, 284 (3d Cir. 2005) (quoting Garner v. Jones, 529 U.S. 244, 255 (2000)). In other words,

> We must follow a two-step inquiry to determine whether a retroactive change in parole standards violates the *Ex Post Facto* Clause. First, we must determine whether the legislative changes were retroactively applied in the prisoner's parole determination. Miller v. Florida, 482 U.S. 423 (1987). Second, we must assess whether the legislative changes 'produced a sufficient risk of increasing the measure of punishment attached to the covered crimes; with respect to the prospective parolee. Morales, 514 U.S. at 509.

Perry v. Vaughn, 2005 WL 736633, at *7 (E.D. Pa.). Plaintiffs bear the burden of proof on these two prongs. Morales, 514 U.S. at 510 n6.

The Third Circuit has already resolved the initial step in this inquiry. In Mickens-Thomas I, the Court of Appeals held that "the record is convincing that after 1996, the Board

applied to the public safety interest far greater weight." Mickens-Thomas v. Vaughn, 321 F.3d 374, 385 (3d Cir. 2003) (hereinafter, "Mickens-Thomas I"), cert. denied sub. nom. Gillis v. Hollawell, 540 U.S. 875 (2003). Further,

> prior to 1996, the Board's concern for potential risks to public safety could not be the sole or dominant basis for parole denial under the existing guidelines. Considerations of public safety were already incorporated into its guidelines analysis; the Board had to point to "unique" factors as a basis for its rejection of the guidelines. Moreover, the Board had to weigh all factors, militating for and against parole, and make its decision on the totality of the factors pertinent to parole, and give appropriate weight to the interest of the inmate. Heavy foot application on one factor could not have been the basis of granting or rejecting parole. Policy declarations in and after 1996 demonstrate that Board stance shifted and that, indeed post -1996 considerations of public safety became the dominant concern of the Board.

Id. at 386. So then, by virtue of the Third Circuit's decision in Mickens-Thomas I, Plaintiffs have met this first important step to establishing an *Ex Post Facto* challenge.

The second step of the analysis is far more difficult to apply to this unique case. Plaintiffs must allege that but for the application of the 1996 amendments, they would have been paroled. See Lynce, 519 U.S. at 444 (stating that an *Ex Post Facto* analysis should focus on the "effect of the law on the inmate's sentence"). Here, Plaintiffs have not alleged this prong of the analysis as to any individual Plaintiff, let alone all of the named Plaintiffs. Instead, the thirty-six named Plaintiffs are identified only by name, prisoner number and address and as "individuals who have been convicted of felonies[14] punishable by a minimum term of two years and are either in the custody of the Pennsylvania Department of Corrections awaiting a favorable parole decision by the Pennsylvania Board of Probation and Parole or on parole and under the supervision of the Board." Document # 1, ¶ 12.

Plaintiffs have not pleaded any allegation regarding the application of the challenged guidelines to any individual Plaintiff as they are bound to do under the case law. Plaintiffs do not

---

[14] "The criminal activity of the named and not named plaintiffs runs the entire ambit of labeled human behavior." Document # 1, ¶ 14.

offer any factual information regarding what crimes Plaintiffs have been convicted of, or when they were denied parole, or on what bases parole was denied. These Plaintiffs are represented by counsel (counsel who professes to have experience in this type of litigation), and so the protections of Haines v. Kerner, 404 U.S. 519 (1972), and its progeny cannot save them in this regard.

Accordingly, the motion to dismiss the *Ex Post Facto* challenge should be granted against the complaint as pled. However, this ruling does not preclude the possibility of habeas corpus relief in some future filing by individuals who may satisfy the two-prong test.

> **2)** **decision-making outside the realm of normal channels [from Complaint] and "making the prospect of parole more remote" [Document # 13]**

Again, Plaintiffs' next set of *ex post facto* claims are difficult to decipher. In the complaint, this section is entitled "decision-making outside the realm of normal channels" and in the opposition brief, Plaintiffs call this section "making the prospect of parole more remote." Simply put, Plaintiffs claim that the following acts by the Board violate the *Ex Post Facto* Clause:

> 1) requiring three YES votes from Board Members before any violent offender can be granted parole (as opposed to two YES votes needed before 1998. Document # 1, ¶ 172-173.

> 2) treating a parole candidate as a violent offender based upon a juvenile conviction, when the current crime is non-violent in nature. Id. at ¶ 174-175.

> 3) giving victims the equivalent of a veto power over an offender's parole (as opposed to only considering a victim statement as one factor prior to the 1996 amendments). Id. at ¶ 176-179.

> 4) holding parole candidates who commit stigmatizing crimes such as those involving children and some sex offenses, to a higher standard due to

23

perception of public opinion and political pressures.  Id. at ¶ 182.

As discussed *infra*, "retroactive changes to the standards used in determining parole may, under some circumstances, violate the Constitution's prohibition on *Ex Post Facto* laws." Garner, 529 U.S. at 250.  "The test for finding a criminal law to be *ex post facto* contains two elements.  First, the law must be retrospective, applying to events prior to its enactment; and second, it must disadvantage the offender affected by it."  Lyons v. Mendez, 303 F.3d 285, 287-88 (3d Cir. 2002) (quoting Weaver, 450 U.S. at 29).

Even assuming that Plaintiffs could meet the retrospective application prong, their claims fail.  As in their previous *ex post facto* challenge, Plaintiffs have not alleged the second prong of the analysis as to any individual Plaintiff, let alone all of the named Plaintiffs.  Each named Plaintiff must show that he or she has been disadvantaged by the application of the retrospective rule.  Plaintiffs have not pleaded any allegation regarding the application of the challenged practices and guidelines to any individual Plaintiff as it is their burden to do under the case law (see Morales, 541 U.S. at 510 n.6) and so they fail to state a claim.

Accordingly, Defendants' motion to dismiss should be granted.


**G.      State Law Claims**

The named Plaintiffs also raise state law claims including: Count I - breach of parole contract; Count II - usurpation of judicial authority; Count III - failure to provide true reasons for denial; Count IV - failure to follow parole suitability criteria; Count V - malfeasance, misfeasance and nonfeasance; and Count VI - arbitrary and capricious decision-making

As this Court recommends that all of the federal claims should be dismissed, it is further recommended that this Court decline to exercise supplemental jurisdiction over the state law claims.  See United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) ("That power [of supplemental jurisdiction] need not be exercised in every case in which it is found to exist. It has

consistently been recognized that pendent [or supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right. ... Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

Accordingly, this case should be dismissed.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss [Document # 11] be denied in part and granted in part. To wit,

-    the motion to dismiss should be denied as to Eleventh Amendment immunity;

-    the motion to dismiss should be granted as to the procedural due process claims;

-    the motion to dismiss should be granted as to the procedural due process claims;

-    the Separation of Powers claims should be dismissed;

-    the motion to dismiss should be granted as to the Fifth Amendment double jeopardy claim;

-    the motion to dismiss should be granted as to the Sixth Amendment claim

-    the motion to dismiss should be granted as to the Fifth Amendment self-incrimination claim;

-    the motion to dismiss should be granted as to all *ex post facto* claims; and

-    this Court should decline to exercise supplemental jurisdiction over the state law claims.

In light of the Recommendation to dismiss this case, the motion to certify the class action [Document # 8] should be dismissed as moot.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written

objections to this report. No extensions of time will be granted. Failure to timely file objections may constitute a waiver of appellate rights. <u>See</u> <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).


<u>Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge


Dated: February 29, 2008