## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOANNE CURLEY, et al.        )
      Plaintiffs          )        **C.A. No. 07-145Erie**
                           )        **District Judge McLaughlin**
vs.                    )        **Magistrate Judge Baxter**
                           )
CATHERINE C. McVEY, et al.    )
      Defendant.        )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## ON

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

### I.      RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss [Document # 24] be granted.

It is further recommended that Plaintiffs' motion to certify a class action [Document # 28] be dismissed as moot.

### II.      REPORT

#### A.      Relevant Factual and Procedural History

##### 1.      The Original Complaint and the First Motion to Dismiss

Originally, the thirty-six named Plaintiffs[1] filed this self-styled class action[2]

---

[1] The named Plaintiffs are: Joanne Curley, Anna Mae Shaffer-Barnhart, Debra Voich, Helen Bevilaqua, Bonnie Neely, Eric Roach, Edward Novasak, Soutchay Chareunsack, Reginald Sanford, Claybourne Frazier, Howard Watson, Rodney Gateward, Jessica E. Wolfe, Larry W.

(continued...)

1

---

[1](...continued)
Garris, James Darras, James Nonnenberg, Jerry Vail, Joseph Martz, Stephen Stoltzfus, Ronald Weaver, Paul Reefer, Terry Lyn Orner, Bernard Wintergrass, Richard Baum, Ellsworth Groff, Jr., Nguyen Dung, Raymond Weiler, Hugo Zuniga, Richard Young, Brian Looks At Clouds Richard, George Ross, Wayne Keller, Robert Benchoff, Steven Podobensky, Christopher Toland, and Gregorio Vargas.

[2] In their original complaint, Plaintiffs defined two separate classes, each with two subclasses, as follows:

**Class One** – All current and future Pennsylvania inmates presently incarcerated for an indeterminate sentence which necessarily requires granting a parole if an inmate is to be released from prison prior to serving their maximum sentence day for day (i.e. calendar time).

> (1) the first subclass, termed the **active class**, shall consist of all Named Plaintiffs (i.e. representative clients) that have financially supported this litigation through payment of a moderate legal fee (i.e. $400). Counsel for the class will maintain this list of active members and keep opposing counsel abreast of new additions periodically or as requested.

> (2) the second subclass, termed the **dormant class**, shall consist of all remaining incarcerated Pennsylvania inmates eligible for parole, excluding of course those inmates exercising their prerogative to opt out of the class.

**Class Two** – All currently and future paroled Pennsylvania inmates subject to the supervision of these Defendants whose right to remain in free society is subject to their discretion, plus all incarcerated Pennsylvania inmates serving time for technical violations occurring on parole or probation, whose release from prison necessarily requires the granting of a new parole if an inmate is to be released prior to serving their Parole Board amended maximum in calendar time.

> (1) the first subclass, termed the **active class,** shall consist of all similarly situated Pennsylvania inmates that have financially supported this litigation through payment of a $400 fee. Counsel for the class will maintain this list of active class members and keep opposing counsel abreast of additions periodically or as requested.

> (2) the second subclass, termed the **dormant class**, shall consist of all former Pennsylvania inmates that cannot financially support the maintenance of this litigation. All remaining Pennsylvania inmates shall fall into this class by default, excluding of course those paroled inmates exercising their prerogative to

(continued...)

2

challenging the manner in which the Board of Probation and Parole and the Department of Corrections operate and manage the parole system. Plaintiffs are represented by counsel, Norman Sirak, Esquire.[3]

The named Plaintiffs were identified only by name, prisoner number and address (as of the date of the filing of the complaint) and as individuals who have been convicted of felonies punishable by a minimum term of two years. The complaint explained that:

> "The criminal activity of the named and not named plaintiffs runs the entire ambit of labeled human behavior. The largest group of crimes involves situational circumstances that will never be repeated. Next, many of these crimes have been driven by addictions to drugs and alcohol. There are some truly horrific crimes, and a far larger number of Plaintiffs that steadfastly maintain their innocence. Many inmates were in their teens when these crimes were committed. Today, in middle age, these offenders have secured college degrees, vocational training and transformed themselves into model prisoners."

Document # 1, ¶ 14. The named Plaintiffs are either in the custody of the Pennsylvania Department of Corrections awaiting a favorable parole decision by the Pennsylvania Board of Probation and Parole (hereinafter, "Board") or on parole and under the supervision of the Board. Document # 1, ¶ 12.

Originally named as Defendants were: Catherine C. McVey; Michael L. Green, Jeffrey R. Imboden, Matthew T. Mangino, Benjamin A. Martinez, Gerard N. Massaro, Michael M. Webster, Lloyd A. White, John Doe the unappointed Ninth Board Member; Secretary of the Department of Corrections Dr. Jeffrey A. Beard; Executive Deputy Secretary of the Department

---

[2](...continued)
opt out of the class.
Document # 1, ¶¶ 28-32. Plaintiffs maintain that "these proposed classes are fluid, in that inmates are leaving Class One and joining members in Class Two. Members of Class Two are being violated and returning to prison, where they can join members of Class One." Id. at 34.

[3] Attorney Sirak has brought at least two prior class action lawsuits challenging matters of state parole in the federal courts of Ohio and Texas. See Michael v. Ghee, 411 F.Supp.2d 813 (N.D. Ohio 2006); Brasfield v. Owens, Case Number A-05CA-1099SS (W.D. Texas 2005). In addition, Attorney Sirak claims that he entered an appearance as *amici curiae* on behalf of his Ohio clients in the U.S. Supreme Court in Wilkinson v. Dotson, 544 U.S. 74 (2005).

of Corrections; and Director of Bureau of Inmate Services Judith Viglione. Defendants were sued only in their official capacities.

Plaintiffs alleged that Defendants engaged and continue to engage in various unconstitutional practices as they relate to the grant or denial of parole. In their prolix eighty-five page original complaint, Plaintiffs asserted the following federal causes of action, verbatim:

Count I - due process

    a)      "unconstitutional reliance upon unchanging factors"

    b)      "lack of notice"

Count II - separation of powers/Fifth and Sixth Amendment violations

    a)      "usurpation of judicial authority"

    b)      "modifying a judicially imposed sentence"

    c)      "denying parole for failing to confess to crime"

Count III - ex post facto clause

    a)      "delaying the exercise of discretion"

    b)      "decision-making outside realm of normal channels"

Document # 1. The named Plaintiffs also raised state law claims, including: Count I - breach of parole contract; Count II - usurpation of judicial authority; Count III - failure to provide true reasons for denial; Count IV - failure to follow parole suitability criteria; Count V - malfeasance, misfeasance and nonfeasance; and Count VI - arbitrary and capricious decision-making. Id. The named Plaintiffs sought injunctive and declaratory relief pursuant to § 1983, as well as other relief on the state law claims. Additionally, Plaintiffs specifically requested that this Court exercise "the principles of pendant jurisdiction" to combine "remedies under §1983 with habeas corpus remedies, subjected to and dependent upon: 1) Plaintiffs' prevailing on the merits of a §1983 claim and, 2) the declaratory relief of §1983 affords partial relief, 3) necessitating a merger of §1983 and habeas corpus because both remedies are indispensable ingredients in the same case or controversy for Article III purposes." Document # 1, ¶¶ 6-9, 37.

Defendants filed a motion to dismiss the complaint. In a Report and Recommendation issued February 29, 2008, the undersigned recommended that the case be dismissed in its entirety. More specifically, I recommended that Defendants' motion to dismiss [Document # 11] be denied in part and granted in part – to wit, that the motion to dismiss be denied as to Eleventh Amendment immunity; the motion to dismiss be granted as to the procedural and substantive due process claims; the motion to dismiss be granted as to the Fifth Amendment double jeopardy and self-incrimination claims; the motion to dismiss be granted as to the Sixth Amendment claim**;** the motion to dismiss be granted as to all *ex post facto* claims; the Separation of Powers claims be dismissed; and this Court should decline to exercise supplemental jurisdiction over the state law claims. I further recommended that the motion to certify the class action be dismissed as moot in light of my recommendation to dismiss the entire case. Document # 18.

Following the filing of Objections to the Report and Recommendation by Plaintiffs, U.S. District Judge Sean J. McLaughlin issued a Memorandum Opinion on March 28, 2008, explaining:

> [Magistrate Judge Baxter] reasonably interpreted Plaintiffs allegations as asserting the following federal constitutional claims: procedural and substantive due process violations; violations of the separation of powers doctrine; violations of the double jeopardy provision of the Fifth Amendment; violations of the Sixth Amendment right to trial by jury; violations of the Fifth Amendment right against self-incrimination; and, violations of the Ex Post Facto Clause. She recommended that the motion to dismiss be denied as to Eleventh Amendment immunity, but that it be granted with respect to Plaintiffs' federal constitutional claims because Plaintiffs have failed to state a claim upon which relief can be granted. She further recommends that the Court decline to exercise supplemental jurisdiction over the state law claims.
>
> Plaintiffs have filed objections to the Magistrate Judge's Report and Recommendation. They contend that their claims have been misconstrued. They clarify that they are not raising any procedural due process claims, any Fifth Amendment due process or self-incrimination claims, or any claims based upon the federal separation of powers doctrine. **Plaintiffs now explain that their federal constitutional claims are premised only upon their substantive due process rights, their Sixth Amendment right to a jury trial, and their rights under the Ex Post Facto Clause. As we read their objections, they expound their substantive due process and ex post facto claims and they present the full scope of those claims in a manner that is not readily discernable from a**

5

**reading of their complaint.**

[...]

In consideration of Federal Rules of Civil Procedure 15(a)'s liberal approach to amending pleadings, **we shall dismiss without prejudice the substantive due process claims, ex post facto claims and state law claims and allow Plaintiffs to file an amended complaint to replead these "clarified" claims.**

[...]

As for Plaintiffs' Sixth Amendment right to a jury trial claim, we find that the Magistrate Judge properly construed this claim and properly recommended that it be dismissed with prejudice. Plaintiffs' objections to the Magistrate Judge's recommendation on their Sixth Amendment claim are without merit. **They may not replead their Sixth Amendment claim in the amended complaint because such an amendment would be futile as it would not withstand a motion to dismiss.** [...] [B]ecause the Court is providing the Plaintiffs with the opportunity to file an amended complaint, we shall dismiss without prejudice their Motion for Class Certification. They may reassert that motion subsequent to the filing of their amended complaint.

Document # 22 (emphasis added).


### 2. The Amended Complaint

On April 2, 2008, the same named Plaintiffs[4] filed their amended complaint. In the amended complaint, Plaintiffs are identified only as "persons who have been convicted of felonies carrying a minimum term of two or more years. Plaintiffs further include persons that [sic] have been released and are currently under supervision. Plaintiffs anticipate continually adding new class members[5] until they number into the thousands." Document # 23, ¶ 7. In the

---

[4] Although the Amended Complaint does not identify the Plaintiffs by name, this Court will assume that all the Plaintiffs listed in the Original Complaint remain.

[5] In the amended complaint, Plaintiffs do not define the parameters of the proposed class. But in their motion for certification of the class filed after the amended complaint, Plaintiffs explain:

> There is one proposed class. This class is defined as follows: all current and future Pennsylvania inmates presently incarcerated for an indeterminate sentence which necessarily requires granting a parole if an inmate is to be released from prison prior to serving this maximum sentence day for day (i.e., calendar time).
>
> (continued...)

amended complaint, Plaintiffs allege a substantive due process claim and an *ex post facto* claim under the federal Constitution.  Plaintiffs also raise the pendant state law claims of: 1) Breach of parole contract and 2) Misfeasance and Nonfeasance in a) refusing to offer programs on an offenders' prescriptive list; b) refusing credit for a completed program because it was not taken at their institution; and c) requiring programs carrying a stigma which are unrelated to an offender's crime (i.e. ordering a sex offender course for an inmate never convicted of a sex crime).  Document # 23, ¶¶ 74-85.  Plaintiffs have also filed a motion for class certification. Document # 28.

In the Amended Complaint, Plaintiffs name the following as Defendants: Catherine McVey, Chair; Michael Green, Jeffrey Imboden, Matthew Mangino, Benjamin Martinez, Gerard Massaro, Charles Fox (succeeding Michael Webster named in the Original Complaint); Lloyd White, and Judy Viglione (filling a vacancy on the Parole Board that existed at the time the Original Complaint was filed)  — all members of the Pennsylvania Parole Board.  Further, Plaintiffs name Jeffrey Beard, Secretary of Pennsylvania Department of Corrections; John Shaffer, Executive Deputy Secretary of the Pennsylvania Department of Corrections; and Abdrea Priori-Meintel (replacing Viglione as the Director of Bureau of Inmate Services).

---

[5](...continued)
Under this broad class, we ask for the creation of two subclasses:

1) The first subclass, termed the **active class**, shall consist of all Named Plaintiffs (i.e. representative clients) that [sic] have financially supported this litigation through payment of a moderate legal fee (i.e. $400). Counsel for the class will maintain this list of active class members and keep opposing Counsel abreast of new additions periodically or as requested.

2) The second subclass, termed the **dormant class**, shall consist of all remaining incarcerated Pennsylvania inmates eligible for parole, excluding of course those inmates exercising their prerogative to opt out of the class.

Document # 28, page 2.

7

Defendants are sued only in their official capacities.  Document # 23, ¶ 9-11.

As relief on their § 1983 claims, Plaintiffs seek the following:

> - a declaration that the practice of making an inmate's liberty interest under the Parole Act captive to a factor that can never change and which can never be influenced by the inmate, to be arbitrary, rendering the opportunity for parole illusory, in violation of the Due Process Clause.
>
> - a permanent order restraining Defendants from denying parole due to the nature of the crime, without articulating how this crime justifies overruling every other factor contained in the Parole Act, and specifically the factors which an inmate can positively influence.
>
> - a declaration that the practice of applying the post-1996 amendment to the Parole Act to inmates with crimes occurring before this was enacted, are a violation of the *ex post facto* clause.
>
> - a permanent order restraining Defendants from applying the 1996 Parole Act amendment relating to public safety and its attendant decision-making practices to inmates with crimes prior to 1996.
>
> - a declaration that the following practices are in violation of the *Ex Post Facto* Clause: 1) requiring violent offenders to secure more than two Yes votes for parole; 2) judging non-violent adult offenders as violent due to a juvenile crime; 3) holding parole hostage to a forgiving or neutral victim statement; and 4) causing parole for stigmatizing crimes to being held hostage to the political climate at the time of their review.

See Document # 23.

Defendants have filed a motion to dismiss the amended complaint and Plaintiff has filed a brief in opposition.  The issues raised in the dispositive motion have been fully briefed and are ripe for disposition by this Court.

**B.      Standard of Review**

**1.      Motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)**

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, ___ 127

8

S.Ct. 2197, 2200 (2007); Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 232 quoting Twombly, 550 U.S. at ___, 127 S.Ct. at 1965 n.3.

## C. Collateral Estoppel

Initially, this Court must address Plaintiffs' argument that the doctrine of collateral estoppel precludes the "successive" motion to dismiss filed by Defendants. In their Opposition Brief, Plaintiffs specifically argue that the doctrine of collateral estoppel precludes Defendants from advancing any of their previous arguments raised in the first motion to dismiss against the claims made in the Amended Complaint because these issues have already been conclusively determined by Judge McLaughlin in his Memorandum Opinion dated March 28, 2008. See Document # 27, Opposition Brief, pages 3-5.

Under the doctrine of issue preclusion (otherwise known as collateral estoppel), a party may not relitigate an issue that was fully and finally decided in an earlier action. The doctrine "specifically bars relitigation of an issue that was conclusively determined in a prior adjudication and that was essential to the original judgment." Novinger Group, Inc. v. Hartford Life & Annuity Insurance Company, 2008 WL 5378288, at * 8 (M.D. Pa. Dec. 23, 2008). "By foreclosing subsequent disputes over issues on which a court has ruled, collateral estoppel promotes fairness and certainty, while preventing the wasteful expenditure of resources upon issues already resolved through adversarial proceedings. Id. citing Allen v. McCurry, 449 U.S. 90, 94 (1980).[6]

The doctrine of collateral estoppel does not apply in this case, even partially, to preclude

---

[6] A federal court sitting in diversity in Pennsylvania must apply Pennsylvania law with respect to issue preclusion principles. Witkowski v. Welch, 173 F.3d 192, 198 (3d Cir. 1999). Under Pennsylvania law, in order for the doctrine of issue preclusion to prevent relitigation of an issue in a second court, the following elements must be met: (1) the issue decided in the prior action is identical to one presented in the later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom preclusion is asserted was a party to the prior action; and (4) the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue in the prior action. Minnick v. City of Duquesne, 65 Fed.Appx. 417, 421 (3d Cir.(Pa.) 2003) citing Rue v. K-Mart Corp., 552 Pa. 13, 713 A.2d 82, 84 (1998).

Defendants' previously raised arguments.  There has been no prior adjudication in this case  –

even by Judge McLaughlin's Memorandum Opinion.

Although Plaintiffs specifically invoke the doctrine of collateral estoppel, perhaps the

more apposite argument would have been the law of the case doctrine which precludes re-

litigation of an issue once it has been decided in an earlier stage of the same proceeding.  In re

Continental Airlines, Inc., 279 F.3d 226, 232 (3d Cir. 2002).  The law of the case doctrine:

> [...] is concerned with the extent to which the law applied in decisions at various
> stages of the same litigation becomes the governing legal precept in later stages.
> The [Supreme] Court has defined the law of the case as a precept that posits that
> when a court decides upon a rule of law, that decision should continue to govern
> the same issues in subsequent stages in the same case.  This rule of practice
> promotes the finality and efficiency of the judicial process by protecting against
> the agitation of settled issues.

Id. at 232-233 (internal citations omitted).

Even this doctrine has little relevance in this case at this stage of the proceedings.

Judge McLaughlin's Memorandum Opinion has only made a conclusive determination as to one

claim made in this case - i.e., that Plaintiffs' Sixth Amendment claim is without merit.  Judge

McLaughlin has not ruled substantively on any other aspect of this case – he has not indicated

that any of Plaintiffs' claims survive a motion to dismiss.  Instead, he has generously allowed

Plaintiffs' to replead and clarify the "full scope" of their claims because they were "not readily

discernible from a reading of their complaint."  See Document # 22; see also supra, pages 5-6.

Accordingly, Defendants are not precluded from raising any of the arguments contained

in the first motion to dismiss as a basis for dismissal of the amended complaint.

**D.     Count I - Due process**

**1)     The Allegations**

Plaintiffs allege that Defendants have violated their due process rights under the

Fourteenth Amendment in myriad ways relating to parole determinations. In their Original

Complaint, Plaintiffs alleged that Defendants engage in a practice of relying on subjective

judgments springing from the "nature of the offense" for denying parole.  Document # 1, ¶ 100.
Plaintiffs explain that the terms *lack of remorse, lack of insight into their criminal behavior, failure to accept responsibility*, and *minimization of their role* (all reasons routinely used as criteria for the denial of parole) are merely euphemisms for "nature of the offense," a condition that inmates are powerless to change.  Id.

In the Amended Complaint, Plaintiffs expand on this claim:

36. Under a subjective due process standard (i.e. a right springing from the Due Process Clause itself), a state statute may not vitiate the fundamental due process right to be free from arbitrary governmental action.  All prisoners have a liberty interest flowing from the Due Process Clause itself in not being denied parole for arbitrary or constitutionally impermissible reasons.

37. Defendants have a practice of relying upon subjective judgments such as *lack of remorse, lack of insight into their criminal behavior, failure to accept responsibility* and *minimization of their role* for denying parole. These statements only become meaningful when applied to the crime. Subjective judgments of this kind are merely euphemisms for *nature of the offense*.

38. Under the Parole Act, the Parole Board is required to take into account the existence of other factors beyond the nature of their crime such as their prison record, their educational achievements and acquisition of skills.

39. With a reading of many parole decisions at a single sitting, it becomes apparent that the Parole Board is denying parole due to the nature of the crime without articulating what it is about the crime that allows it to overpower every other factor which the Parole Act requires to be considered.

40. Plaintiffs submit that these dismissals are dictated by an unforgiving, no exception policy and this policy has served as a substitute for the exercise of discretion.  At the same time, Parole Board discretion has served as a smokescreen, enabling it to hide these machinations.

41. Plaintiffs submit that Defendants have adopted a policy and an executive agenda which has dismantled parole as it is envisioned in the Parole Act. Instead of contemplating a balancing of interest – the liberty interest of a inmate counterbalanced by societal interests in prevention of violent crime – governed by principles of equity, these Defendants are looking exclusively at the crime and at nothing else.  As a result, an inmate's liberty interest is being held captive to a factor that will never change and cannot be influenced.

42. While parole is a privilege, the State may not arbitrarily abrogate an

12

offender's right to parole. When an inmate's liberty interest, although attenuated, becomes captive to a factor that can never change and can never be influenced by the candidate, contrary to a legislative enactment requiring the consideration of factors which can be positively influenced, a right to parole has been arbitrarily abrogated in violation of the Due Process Clause. Plaintiffs further state that these practices are pervasive and deeply embedded.

Document # 23.[7]

### 2)    Law

"Due process" is guaranteed through the Fourteenth Amendment of the United States Constitution which provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them. Foucha v. Louisiana, 504 U.S. 71, 80 (1990). See also Daniels v. Williams, 474 U.S. 327, 329-33 (1986); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.").

The Supreme Court has declined to set forth a precise rule that defines the exact scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause. County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (clarifying that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience."). See generally Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992) ("As a general matter, [this] Court has always been reluctant to expand the concept of substantive due process because guideposts for

_____

[7] Since the filing of the amended complaint and the motion to dismiss it, Plaintiffs filed a Notice to the Court citing Governor Rendell's suspension of parole issued September 29, 2008, as evidence in support of the complaint, specifically paragraphs 41 and 42. Document # 31. However, the parole moratorium was lifted as to non-violent offenders on October 20, 2008 and as to violent offenders on December 1, 2008. Document # 34. The temporary suspension of parole does not rise to the level arbitrariness to support a substantive due process challenge.

responsible decision making in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.").

The Third Circuit has explained that "the relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberate indifference.'" Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002). This quotation – with the troublesome "or" – is the center of debate between the parties as to the standard to be applied in this case. Plaintiffs urge that this Court use a "deliberate indifference"[8] standard to review the challenged actions, while Defendants argue that "shocks the conscience" is the correct standard. Despite the litigants' arguments to the contrary, these two standards are not mutually exclusive, and in the context of a substantive due process analysis, describe the same review. See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002).

The real difficulty comes, not in naming the standard of review, but rather in defining the parameters.[9] Recently, the Third Circuit opined:

_____

[8] Importantly, this "deliberate indifference" is not the same as a deliberate indifference analysis under the rubric of the Eighth Amendment. Under the Eighth Amendment analysis, the prisoner must demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994). This element is satisfied when the alleged "punishment" is "objectively sufficiently serious." Id. Second, the prison officials involved must have a sufficiently culpable state of mind. Id. at 838. See also Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (explaining the precepts taken from Farmer v. Brennan and Hamilton v. Leavy, 117 F.3d 742 (3d Cir. 1997)); Conn v. Bull, 2009 WL 136565, at *2 n.2 (3d Cir. Jan. 21, 2009) quoting Kaucher v. County of Bucks, 455 F.3d 418, 428 n. 5 (3d Cir.2006) (opining that the Third Circuit has "yet to determine whether deliberate indifference, outside the context of the Eighth Amendment, is governed by an objective or a subjective standard.").

[9] See Folk v. Attorney General of Commonwealth of Pennsylvania, 425 F.Supp.2d 663, 672 (W.D. Pa. 2006) quoting Chavez v. Martinez, 538 U.S. 760, 775 (2003) (the test is "less than precise."). See also Woodwind Estates Ltd. v. Gretkowski, 205 F.3d 118, 122 (3d Cir.2000) (substantive due process "is an area of the law famous for its controversy, and not

(continued...)

> Because the "exact degree of wrongfulness necessary to reach the conscience-shocking level depends upon the circumstances of a particular case," <u>Miller v. City of Philadelphia</u>, 174 F.3d 368, 375 (3d Cir. 1999), we must evaluate the conditions under which a defendant acted in order to ascertain the relevant standard of culpability." <u>See</u> <u>also</u> <u>Smith I</u>, 318 F.3d at 508.

<u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 426 (3d Cir. 2006).

The terms 'deliberate indifference' and 'conscience shocking' are complimentary in the context of substantive due process because both necessitate a level of egregiousness that is truly offensive to our constitutional sensibilities. It is true that in the **parole** setting, the term used to describe the required governmental behavior is most often "shocks the conscience." <u>See</u> <u>Folk</u>, 425 F.Supp.2d at 672 ("requir[ing] that the aggrieved person establish that the [...] action shocks the court's conscience").[10] But, this exercise in semantics is off the mark. Simply put, the challenged conduct must rise to a sufficient level of egregiousness, no matter what term is used.

_____

[9](...continued)
known for its simplicity.").

[10] <u>See</u> <u>also</u> <u>Leamer</u>, 288 F.3d 532 (explaining that deliberate indifference may rise to the level of conscience-shocking in a civil rights action challenging an inmate's placement in a restrict activities program); <u>O'Connell v. Sobina</u>, 2008 WL 144199 (W.D. Pa. 2008) (civil rights action utilizing "shock the conscience" standard in a substantive due process challenge to parole denial); <u>Ammouri v. Klem</u>, 2007 WL 1892489, at 6 (E.D. Pa.) <u>citing</u> <u>Hunterson</u>, 308 F.3d at 247 n 10 ("To show that discretionary action, like that of a parole board, constitutes a substantive due process violation, there must be a showing that the action taken 'shocks the conscience.'"); and <u>Goldhaber v. Higgins</u>, 576 F.Supp.2d 694 (W.D. Pa. 2007) (civil rights action utilizing "shock the conscience" standard in a substantive due process challenge to parole denial).

In the context of habeas review, <u>see</u> <u>Vega v. United States</u>, 493 F.3d 310 (3d Cir. 2007) (in employing the 'shock the conscience' standard in a habeas challenge, the court indicated "as a matter of first impression, the substantive due process clause did not entitle prisoner to credit against his federal sentence for the almost two years he spent at liberty before being returned to federal prison."); <u>Bentley v. Tennis</u>, 2007 WL 4248258, at 4 (M.D. Pa.) (habeas challenge to parole denial using "shock the conscience" standard); <u>White v Folino</u>, 2007 WL 2814482 (E.D. Pa. 2007) (habeas case utilizing "shock the conscience" standard in substantive due process challenge to parole denial); <u>Logan v. Klem</u>, 2006 WL 2950486, at * 19 (E.D. Pa.) (in a habeas challenge, "we do not believe the Board's denial of reparole [...] meets this [shocks the conscience] standard.").

### 3)    Application

The Commonwealth of Pennsylvania has vested the Parole Board with broad discretion to make parole determinations. Since 1996, the Board has been statutorily bound to consider first the protection of the safety of the public. 61 Pa.Stat. § 331.1. The Board is further statutorily required to consider the nature and character of the offense committed, as well as the general character and history of the prisoner, the written or personal statement or testimony of the victim or victim's family, and the recommendations of the trial judge, the district attorney and of each warden or superintendent who has had control over the applicant. 61 Pa. Stat. § 331.19.

Pennsylvania's parole statute provides, in pertinent part:

> It shall be the duty of the board [...] to consider the nature and circumstances of the offense committed, any recommendations made by the trial judge and prosecuting attorney, the general character and background of the prisoner, participation by a prisoner who is serving a sentence for a crime of violence [...] in a victim impact education program offered by the Department of Corrections and the written or personal statement of the testimony of the victim or the victim's family [...] . The board shall further consider the notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available. The board shall further cause the conduct of the person while in prison and his physical, mental and behavioral condition and history, his history of family violence and his complete criminal record, as far as the same may be known, to be reported and investigated.

61 Pa. Stat. § 331.19.

Plaintiffs argue "that if you view dozens of decisions at one sitting, the existence of a policy dictating denials is self evident. The Parole Board is denying parole on account of the crime without articulating what it is about the crime that justifies an absence of consideration for remaining factors which the Parole Board is obligated to consider before finding a candidate unsuitable. This pattern, coupled with the same menu of reasons for denial and the same absence of explanation, exposes the presence of a policy which serves as a substitute for the exercise of discretion." Document # 27, page 9.

Here, neither the Board's consideration of criteria expressly mandated by the Commonwealth's statute nor the fact that many inmates serve their maximum sentence is egregious enough to shock the conscience of this Court and constitute arbitrariness in the constitutional sense. Further, the fact that several of these statutorily required considerations are, in Plaintiff's lexicon, "held captive to" the nature of the underlying offense is not egregious or arbitrary enough to shock the conscience. See Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001) (federal courts "are not to second guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision."). The fact that the nature of the underlying offense continues to be considered at the time of a parole hearing is appropriate as it is pertinent to the parole decision.

Importantly, the caselaw makes it clear that "the assessment of what constitutes conscience-shocking behavior differs according to the factual setting." Leamer, 288 F.3d at 547. See also Lewis, 523 U.S. at 850 ("Our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned."); Kaucher, 455 F.3d at 426 ("Acts that fall between the extremes of mere negligence and harmful intent require courts to make "closer calls," based on a context-specific inquiry."); Estate of Smith v. Marasco (Smith I), 318 F.3d 497, 508 (3d Cir. 2003) ("[O]ur cases have repeatedly acknowledged ... that the meaning of [the shocks the conscience] standard varies depending on the factual context."); Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir.1999) (the "exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case"); Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623 (1st Cir. 2000) ("determination of whether state conduct 'shocks the conscience' is necessarily fact-specific and unique to the particular circumstances in which the conduct occurred."); Blain v. Township of Radnor, 2004 WL 1151727, at *4 (E.D.Pa. 2004) ("The conscience-shocking inquiry is fact-specific."); Sengchanh v. Lanier, 89 F.Supp.2d 1356, 1362 (N.D. Ga. 2000) ( a substantive due process determination as to a deportable alien's challenged

17

detention "requires a fact specific analysis, including consideration of the length of the ... likely detention, the likelihood of deportation, the potential length of future detention, the likelihood of flight, and the danger to the community posed by the petitioner if he ... is released.").

Here, Plaintiffs have alleged no specific facts regarding their own parole denials upon which this Court can base a decision that any particular denial has been egregious enough to fail constitutional muster.[11]  While it is plausible that some of the individual Plaintiffs may have suffered a violation of their substantive due process rights as related to the denial of their own parole, those specifics have not been pled in this civil rights action.  The Amended Complaint pleads only broad generalities which do not rise to the level of egregiousness necessary to state a cognizable substantive due process claim.

Accordingly, Defendants' motion to dismiss should be granted as to this claim.


### E.    Count II - Ex Post Facto Clause[12]

#### 1)    The Allegations

Plaintiffs argue that pre-1996 offenders[13] are being subjected to the heightened "public

---

[11]  In their Opposition Brief, Plaintiffs provide three parole denial forms in which no reason was listed for the denial of parole.  Document # 27-2, pages 2-4.  Of the three denial forms, two (Carla Lynn Borchick and George Gorso) relate to individuals other than the thirty-six named Plaintiffs.  The third such denial is for Plaintiff Terry Lynn Orner, but is dated September 6, 2002, which is well beyond the two-year statute of limitations applicable in this case.  See Garvin v. City of Philadelpia, 354 F.3d 215, 220 (3d Cir. (Pa.) 2003) (In Pennsylvania, the statute of limitations is two years from the date of the alleged violation for § 1983 actions);  Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir.(Pa.) 1996).

[12]  The Ex Post Facto Clause of the United States Constitution provides that "[n]o state shall . . . pass any . . . *ex post facto* law." U.S. Const. Art. 1, § 10.  "The prohibition of ex post facto laws has two purposes: 1) it prevents legislatures from interfering with the executive and judicial roles of prosecution and punishment; and 2) it assures that legislative acts give fair warning of what action swill be punished and the degree to which they will be punished." Coady v. Vaughn, 251 F.3d 481, 487-88 (3d Cir. 2001).

[13]  The statute in effect between 1941 and 1996 made no specific mention of public

(continued...)

safety criteria" of the 1996 Parole Act[14].   In the Amended Complaint, Plaintiffs allege:

> 60.   Since 1998, the Parole Board has a practice and an established state procedure of requiring five YES votes instead of two when considering parole eligibility of a violent offender.  Three YES votes must be cast by Board Members.  The rule requiring five decision-makers (and three Board members) to vote YES as compared to two decision-makers is clearly calculated to make granting a parole more difficult.

> 62.   Many first time adult offenders convicted of non-violent crimes have a juvenile record reflecting a crime of violence.  While the Parole Board certainly has the right to consider an offender's juvenile record when it is time to formulate conditions for release, this juvenile record should not

_____

[13](...continued)
safety and read:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subjected or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment, and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this Act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

Mickens-Thomas v. Vaughn, 321 F.3d 374, 377 (3d Cir. 2003) (hereinafter, "Mickens-Thomas I").

[14]   In contrast to the multi-faceted analysis of the pre-1996 Act, the 1996 amendments to the statute placed a predominant emphasis on public safety consideration in making parole determinations:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.  In providing these benefits to the criminal justice system, *the board shall first and foremost seek to protect the safety of the public*.  In addition to this goal, the board shall address input by crime victims and assist in the fair administration of justice by ensuring the custody, control and treatment of paroled offenders.

Mickens-Thomas I, 321 F.3d at 377 (emphasis added).

become the centerpiece of the decision. The Parole Board has a practice of looking beyond the non-violent current offense (i.e., the normal channel) and reviewing instead, juvenile convictions. If there is a violent juvenile conviction, these candidates are considered violent offenders notwithstanding their non-violent crimes.

64.    The Parole Board actively solicits comments from victims prior to reviewing an offender for parole. Prior to the 1996 amendments, the victim was only considered when formulating parole conditions, to avoid any contact. Since the 1996 amendment and heightened emphasis upon public safety, the Parole Board has adopted a practice and an established state procedure of giving victims the equivalent to a veto power over an offenders' parole. This practice has been applied retroactively to all plaintiffs.

68.    Since 1996, when correctional professionals on the Parole Board were replaced with political appointees, the Parole Board has become vulnerable to political pressures. Before releasing inmates convicted of certain stigmatizing crimes, such as crimes against children and certain sex crimes, the political consequences of the decision are contemplated, the politicizing of parole decision-making repeals parole eligibility as outlined in the Parole Act (i.e., the normal channel) and replaces it with perceptions of public opinion.

Document # 23.[15]

_____

[15] These claims are no different than those of the Original Complaint which this Magistrate Judge summarized in the first Report and Recommendation as:

"1)    requiring three YES votes from Board Members before any violent offender can be granted parole (as opposed to two YES votes needed before 1998. Document # 1, ¶ 172-173.

2)     treating a parole candidate as a violent offender based upon a juvenile conviction, when the current crime is non-violent in nature. Id. at ¶ 174-175.

3)    giving victims the equivalent of a veto power over an offender's parole (as opposed to only considering a victim statement as one factor prior to the 1996 amendments). Id. at ¶ 176-179.

4)    holding parole candidates who commit stigmatizing crimes such as those involving children and some sex offenses, to a higher standard due to perception of public opinion and political pressures. Id. at ¶ 182."

Document # 18.

### 2) Law

The *Ex Post Facto* Clause "protects liberty by preventing governments from enacting statutes with 'manifestly unjust and oppressive retroactive effect.'" Stogner v. California, 539 U.S. 607, 611 (2003). The Clause "forbids the enactment of any law which imposes a punishment for an act 'which was not punishable at the time it was committed; or imposes additional punishment to that then described.'" Coady v. Vaughn, 251 F.3d 481, 487 (3d Cir. 2001) quoting Weaver v. Graham, 450 U.S. 24, 28 (1981). The Supreme Court has instructed that "[t]o fall within the *ex post facto* prohibition, a law must be retrospective--that is, it must apply to events occurring before its enactment--and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (citation and quotation omitted). "Retroactive changes to the standards used in determining parole may, under some circumstances, violate the Constitution's prohibition on *Ex Post Facto* laws." Garner v. Jones, 529 U.S. 244, 250 (2000).

In analyzing whether a law violates the *Ex Post Facto* Clause, courts are required to determine whether the law resulted in "a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't. of Corrections v. Morales, 514 U.S. 499, 509 (1995). See also Garner, 529 U.S. at 255 (when the rule at issue does not by its own terms show a significant risk, the burden is on the parole applicant to demonstrate "that its retroactive application will result in a longer period of incarceration than under the earlier rule"); Johnson v. United States, 529 U.S. 694 (2000) (to succeed in *ex post facto* claim, petitioner must prove that legislation increases the penalty from whatever the law provided when the criminal act was committed). Cf. Hameen v. State of Delaware, 212 F.3d 226, 240 (3d Cir. 2000) (in characterizing the Supreme Court's Morales decision, the Court of Appeals indicated that the "focus of ex post facto inquiry is not on whether legislative change produces some ambiguous sort of disadvantage ... rather, proper focus is whether the law alters the definition of criminal conduct or increases the penalty by which a crime is punishable.").

Thus, to succeed in establishing an *ex post facto* claim, Plaintiffs must be able to show "both a retroactive change in law or policy and that this change caused individual disadvantage by creating 'a significant risk of increasing his punishment.'" <u>Richardson v. Pennsylvania Board of Probation & Parole</u>, 423 F.3d 282, 284 (3d Cir. 2005) <u>quoting</u> <u>Garner</u>, 529 U.S. at 255. (2000). <u>See also</u> <u>Lyons v. Mendez</u>, 303 F.3d 285, 287-88 (3d Cir. 2002) <u>quoting</u> <u>Weaver</u>, 450 U.S. at 29. In other words,

> We must follow a two-step inquiry to determine whether a retroactive change in parole standards violates the *Ex Post Facto* Clause. First, we must determine whether the legislative changes were retroactively applied in the prisoner's parole determination. <u>Miller v. Florida</u>, 482 U.S. 423 (1987). Second, we must assess whether the legislative changes 'produced a sufficient risk of increasing the measure of punishment attached to the covered crimes'; with respect to the prospective parolee. <u>Morales</u>, 514 U.S. at 509.

<u>Perry v. Vaughn</u>, 2005 WL 736633, at *7 (E.D. Pa.). Importantly, Plaintiffs bear the burden of proof on these two prongs. <u>Morales</u>, 514 U.S. at 510 n6. <u>See also</u> <u>Cimaszewski v. Pennsylvania Board of Probation & Parole</u>, 868 A.2d 416, 426 (Pa. Supreme 2005).

### a) Prong 1

The Third Circuit has already resolved the initial step in this inquiry. In <u>Mickens-Thomas I</u>, the Court of Appeals held that "the record is convincing that after 1996, the Board applied to the public safety interest far greater weight." <u>Mickens-Thomas v. Vaughn</u>, 321 F.3d 374, 385 (3d Cir. 2003) (hereinafter, "<u>Mickens-Thomas I</u>"), <u>cert.</u> <u>denied</u> <u>sub.</u> <u>nom.</u> <u>Gillis v. Hollawell</u>, 540 U.S. 875 (2003). <u>See also</u> <u>Cimaszewski</u>, 868 A.2d at 426 ("[U]nder *Garner* and *Morales*, the 1996 amendments may be shown to violate the *ex post facto* clause if an inmate is able to demonstrate that the 1996 amendment, as applied to him creates a significant risk of prolonging his incarceration."). Further,

> prior to 1996, the Board's concern for potential risks to public safety could not be the sole or dominant basis for parole denial under the existing guidelines. Considerations of public safety were already incorporated into its guidelines analysis; the Board had to point to "unique" factors as a basis for its rejection of the guidelines. Moreover, the Board had to weigh all factors, militating for and

22

against parole, and make its decision on the totality of the factors pertinent to parole, and give appropriate weight to the interest of the inmate. Heavy foot application on one factor could not have been the basis of granting or rejecting parole. Policy declarations in and after 1996 demonstrate that Board stance shifted and that, indeed post -1996 considerations of public safety became the dominant concern of the Board.

Mickens-Thomas I, 321 F.3d at 386. So then, by virtue of the Third Circuit's decision in Mickens-Thomas I, as well as the Pennsylvania Supreme Court's decision in Cimaszewski, it is at least plausible that some of the named Plaintiffs have met this first important step in establishing an *Ex Post Facto* challenge.[16]


  **b)**  **Prong 2**

  However, the second step of the *ex post facto* analysis is far more difficult to apply to this unique case. The "key question is whether 'the change affected the Petitioner's *own* sentence detrimentally.'" Richardson, 426 F.3d at 291 quoting Mickens-Thomas I, 321 F.3d at 393 (emphasis in original). Further, "while the 'general operation of the ... parole system may produce relevant evidence and inform further analysis,' the ultimate question is the effect of the change in parole standards on the individual's risk of increased punishment." Richardson, 426 F.3d at 291 quoting Garner, 529 U.S. at 255. The Pennsylvania Supreme Court has further explained:

> Speculative and attenuated possibilities of increasing punishment, however, do not suffice. **Instead, this fact-intensive inquiry must be conducted on an individual basis.** As the Supreme Court has indicated, "[w]hen the rule does not by its own terms show a significant risk, the [challenger] must demonstrate, by evidence drawn from the rule's practical implementation ... that its retroactive application will result in a longer period of incarceration than under the earlier rule." Garner, 529 U.S. at 255. Thus, to state an actionable claim, an inmate must present some facts showing that the result of this change in policy, by its own terms, demonstrates a significant risk of prolonging the inmate's term of incarceration, or that it negatively impacts the chance the inmate has to be released on parole. See Garner; Morales. Preliminarily, the prisoner must first plead that he can provide the requisite evidence that he faces a significant risk of an increase in punishment by application of the 1996 amendment, specifically,

---

[16] The date upon which Plaintiffs were convicted is of particular importance to the *ex post facto* analysis.

that under the pre-1996 Parole Act, the Board would likely have paroled the inmate. Without first pleading that such evidence exists, there is no basis for providing a prisoner with the opportunity for an evidentiary proceeding, and, without such a hearing, no basis for affording relief.

[. . .]

We hold that it is insufficient to discuss the statistics from *Mickens-Thomas*, for the basis of the contention that one would have been released but for the 1996 amendment. Appellant bears the burden of pleading and proving that under the pre-1996 Parole Act, he would have been paroled, while under the 1996 amendment he has not been paroled.

Cimaszewski, at 428-429 (emphasis added).

As this Magistrate Judge pointed out in the first Report and Recommendation in this case, Plaintiffs did not sufficiently allege this second prong of the analysis as to **any** individual Plaintiff in the original complaint, let alone all of the named Plaintiffs. At that time, I explained that because the complaint was counseled, the opportunity to amend the complaint to cure this defect should be denied. However, Judge McLaughlin disagreed and generously allowed counsel the opportunity to amend the complaint in this regard.

Now, counsel has still not properly pled an *Ex Post Facto* claim upon which relief can be granted. Instead, in the Amended Complaint, the thirty-six named Plaintiffs are identified only as "persons who have been convicted of felonies carrying a minimum term of two or more years. Plaintiffs further include persons that [sic] have been released and are currently under supervision." Document # 23, ¶ 7. Plaintiffs do not offer any factual information regarding the crimes of which they have been convicted, the dates upon which they were convicted, the dates upon which they were denied parole, or the bases upon which parole was denied. Plaintiffs have not pleaded any allegation regarding the application of the challenged guidelines to any individual Plaintiff as they are bound to do under the case law in order to state a claim upon which relief may be granted.

Accordingly, the motion to dismiss the *Ex Post Facto* challenge should be granted against this civil rights complaint as pled.

### F. State Law Claims

The named Plaintiffs also raise state law claims including: 1) Breach of parole contract and 2) Misfeasance and Nonfeasance in a) refusing to offer programs on an offenders' prescriptive list; b) refusing credit for a completed program because it was not taken at their institution; and c) requiring programs carrying a stigma which are unrelated to an offender's crime (i.e. ordering a sex offender course for an inmate never convicted of a sex crime). Document # 23, ¶¶ 74-85.

As this Court recommends that all of the federal claims should be dismissed, this Court decline to exercise supplemental jurisdiction over the state law claims. See United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) ("That power [of supplemental jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent [or supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right. ... Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

Accordingly, this case should be dismissed.


## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss [Document # 24] be granted.[17]

It is further recommended that Plaintiffs' motion to certify a class action [Document # 28] be dismissed as moot.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and

---

[17] Nothing in this Report and Recommendation precludes the possibility of habeas corpus relief in some future filing by individuals.

Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. No extensions of time will be granted. Failure to timely file objections may constitute a waiver of appellate rights. <u>See</u> <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

                                                                <u>Susan Paradise Baxter</u>
                                                                SUSAN PARADISE BAXTER
                                                                Chief United States Magistrate Judge

Dated: February 27, 2009